FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2015 OCT 22 P 1:12

WILLIAM W. BLEVINS
CLERK

**FELONY**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD, CONSPIRACY TO SUBMIT FALSE STATEMENTS, AND FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION NO. 2:15-00152 |
| VERSUS | * | SECTION: J |
| RODNEY HESSON, PSY.D. | * | VIOLATIONS: 18 U.S.C. § 1349 |
| GERTRUDE PARKER | | 18 U.S.C. § 371 |
| BEVERLY STUBBLEFIELD, PH.D | * | 18 U.S.C. § 982 |
| JOHN TEAL, PH.D | | |

\* \* \*

The Grand Jury charges that:

## COUNT ONE

### CONSPIRACY TO COMMIT HEALTH CARE FRAUD (18 U.S.C. § 1349)

**A.  AT ALL TIMES MATERIAL HEREIN:**

#### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, and Section 24(b).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

3. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number ("HICN").

4. Physicians, clinics, and other health care providers, including licensed clinical psychologists, that provided services that were reimbursed by Medicare were referred to as Medicare "providers."

5. To participate in Medicare, providers were required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

6. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

7. "Part B" of the Medicare program paid for certain costs associated with psychological testing and psychotherapy services. Medicare required that documentation of such services be kept by participating providers in order to be paid.

### Psychological Testing Services and Billing Procedures

8. For providers to be paid for psychological testing services that they performed, Medicare required the submission of claims (sometimes referred to as "billings") which, among other things, set forth the date of the service, the service provided, the identity and unique Medicare provider number of the licensed physician or licensed clinical psychologist who performed the psychological testing with the beneficiary, and the identity and unique HICN of the beneficiary who received the psychological testing services.

9. "Psychology" is a specialized field for the diagnosis and treatment of mental health disorders and diseases. "Psychological testing" is used when a patient has a psychiatric or

central nervous system (CNS) illness and demonstrates emotional or behavioral symptoms sufficient to suspect an underlying psychiatric or CNS illness. "Psychotherapy" is the treatment of mental illness and behavioral disturbances.

10. The American Medical Association (AMA) assigned five-digit numerical codes to medical procedures performed by health care providers. The codes were known as Current Procedural Terminology (CPT) codes. The CPT codes, published annually by the AMA, set forth a systematic listing and coding of procedures and services performed by physicians. Medicare established a usual, customary and reasonable fee for each service rendered, as described by its corresponding CPT code.

11. Medicare Part B paid for psychological testing services billed using CPT Code 96101 when performed by a licensed physician or licensed clinical psychologist, when mental illness was suspected and it was determined that clarification was essential for the patient's diagnosis, treatment plan, and testing.

12. Medicare Part B did not reimburse psychological testing conducted when no mental illness or disability was suspected, as that was considered screening. Non-specific behaviors that did not suggest the possibility of mental illness or disability were not an acceptable indication for testing.

13. Medicare Part B billing under CPT Code 96101 included the provider's time spent (1) face to face with a patient administering the test, and (2) interpreting and preparing the report.

14. Medicare Part B required that CPT Code 96102 be used to bill for psychological testing services provided by a qualified technician, and prohibited those services from being added to any other CPT Code.

## The Subject Medicare Providers

15. Nursing Home Psychological Service of Louisiana, LLC (NHPS-LA) was incorporated on April 29, 2009, and listed a business address of 109 Constellation Drive, Slidell, Louisiana. Between January 1, 2009, and May 31, 2015, NHPS-LA submitted approximately 5,011 claims to Medicare for about 2,063 patients, amounting to approximately $3,095,731.50. Medicare paid approximately $1,350,281.84 on these claims.

16. Nursing Home Psychological Service of Mississippi, LLC (NHPS-MS) was incorporated on September 28, 2006, and listed a business address of 705 Main Street, Purvis, Mississippi. Between January 1, 2009, and May 31, 2015, NHPS-MS submitted approximately 18,281 claims to Medicare for about 5,618 patients, amounting to approximately $10,873,873.50. Medicare paid approximately $4,939,914.06 on these claims.

17. Nursing Home Psychological Service of Florida, LLC (NHPS-FL) was incorporated on March 22, 2011, and listed a business address of 515 East Park Avenue, Tallahassee, Florida. Between January 1, 2009, and May 31, 2015, NHPS-FL submitted approximately 486 claims to Medicare for about 288 patients, amounting to approximately $267,635.00. Medicare paid approximately $119,884.03 on these claims.

18. Nursing Home Psychological Service of Alabama, LLC (NHPS-AL) was incorporated on April 12, 2002, and listed a business address at 700 46th Street South, Birmingham, Alabama. Between January 1, 2009, and May 31, 2015, NHPS-AL submitted approximately 300 claims for about 112 patients, amounting to approximately $185,122.50. Medicare paid approximately $79,065.81 on these claims.

19.     Psychological Care Services of Louisiana (PCS-LA) was incorporated on August 8, 2011, and listed a business address of 109 Doubloon Drive, Slidell, Louisiana. Between January 1, 2009, and May 31, 2015, PCS-LA submitted approximately 8,349 claims to Medicare for about 2,726 patients amounting to approximately $1,843,485.00. Medicare paid approximately $1,041,924.64 on these claims.

20.     Psychological Care Services of Mississippi (PCS-MS) was incorporated on January 2, 2013, and listed a business address as 645 Lakeland East Dr., Suite 101, Flowood, Mississippi. Between January 1, 2009, and May 31, 2015, PCS-MS submitted approximately 22,018 claims to Medicare for about 6,244 patients, amounting to approximately $7,554,125.00. Medicare paid approximately $4,221,736.84 on these claims.

21.     Psychological Care Services of Alabama (PCS-AL) was incorporated on August 9, 2011, and operated at 1 Perimeter Park S, Suite 100N, Birmingham, Alabama. Between January 1, 2009, and May 31, 2015, PCS-AL submitted approximately 1,917 claims to Medicare for about 674 patients, amounting to approximately $611,385.00. Medicare paid approximately $339,123.61 on these claims.

22.     Psychological Care Services of Florida (PCS-FL) was incorporated on August 8, 2011, and listed a business address of 85 Whisperwood Blvd., Suite 1P, Slidell, Louisiana. Between January 1, 2009, and May 31, 2015, PCS-FL submitted approximately 2,503 claims for about 919 patients amounting to approximately $769,400.00. Medicare paid approximately $446,420.93 on these claims.

23.     NHPS-LA, NHPS-MS, NHPS-FL, NHPS-AL, PCS-LA, PCS-MS, PCS-AL, and PCS-FL (collectively referred to as the "SUBJECT COMPANIES") each claimed to provide psychological testing, psychotherapy, and related services.

## The Defendants

24. **RODNEY HESSON, PSY.D. (HESSON)**, a resident of Slidell, Louisiana, owned, operated, and served as a licensed clinical psychologist who purportedly provided psychological testing and other related services for NHPS-LA, NHPS-MS, NHPS-AL, and NHPS-FL, and served as an agent for NHPS-LA, NHPS-MS, NHPS-AL, NHPS-FL PCS-LA, PCS-MS, PCS-AL, and PCS-FL.

25. **GERTRUDE PARKER (PARKER)**, a resident of Slidell, Louisiana, owned and operated PCS-LA, PCS-MS, PCS-AL, and PCS-FL.

26. **BEVERLY STUBBLEFIELD, PH.D. (STUBBLEFIELD)**, a resident of Slidell, Louisiana, served as a licensed clinical psychologist who purportedly provided psychological testing and other related services for PCS-MS, and was Clinical Director for certain of the SUBJECT COMPANIES.

27. **JOHN TEAL, PH.D. (TEAL)**, a resident of Jackson, Mississippi, served as a licensed clinical psychologist who purportedly provided psychological testing and other related services for certain of the SUBJECT COMPANIES, including PCS-MS.

**B.    CONSPIRACY TO COMMIT HEALTH CARE FRAUD (18 U.S.C. § 1349):**

28. Beginning in or around January 2009, and continuing through the present, in the Eastern District of Louisiana, and elsewhere, defendants **RODNEY HESSON, PSY.D., GERTRUDE PARKER, BEVERLY STUBBLEFIELD, PH.D, JOHN TEAL, PH.D.**, and other unnamed co-conspirators, did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, known and unknown to the Grand Jury, to commit health care fraud, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money, and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

C.  **PURPOSE OF THE CONSPIRACY:**

29. It was a purpose of the conspiracy for defendants **HESSON, PARKER, STUBBLEFIELD, TEAL**, and other known and unknown co-conspirators, to unlawfully enrich themselves by, among other things, (a) obtaining access to patients in nursing homes located in and outside of the Eastern District of Louisiana for the purpose of performing psychological testing and related services on these patients; (b) causing the submission and concealment of false and fraudulent claims to Medicare for psychological testing and related services that were not medically necessary, and in some instances, were not provided; and (c) causing the diversion of the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

D.  **MANNER AND MEANS OF THE CONSPIRACY:**

30. The manner and means by which the defendants and other known and unknown co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

31. **HESSON** maintained valid Medicare provider numbers for NHPS-LA, NHPS-MS, NHPS-AL, and NHPS-FL in order to fraudulently submit Medicare claims for psychological testing and related services that were not medically necessary and, in some instances, were not provided.

32. **HESSON** obtained and maintained signature authority for corporate bank accounts at Aliant Bank (Account No. xxxx8045) and Central Progressive Bank (Account No. xxxxxx0879) for NHPS-LA; Aliant Bank (Account No. xxxx9657) and Central Progressive Bank

(Account No. xxxxxx0887) for NHPS-MS; Aliant Bank (Account No. xxxx8037) and Central Progressive Bank (Account No. xxxxxx0275) for NHPS-AL; and Central Progressive Bank (Account No. xxxxxx1108) for NHPS-FL.

33. **PARKER** maintained valid Medicare provider numbers for PCS-LA, PCS-MS, PCS-AL, and PCS-FL in order to fraudulently submit Medicare claims for psychological testing and related services that were not medically necessary and, in some instances, were not provided.

34. **PARKER** obtained and maintained signature authority for corporate bank accounts at First NBC Bank for PCS-LA (Account No. xxxxx5707), PCS-MS (Account No. xxxxx5652), PCS-AL (Account No. xxxxx5663), and PCS-FL (Account No. xxxxx5696).

35. **HESSON**, **PARKER**, and other known and unknown co-conspirators caused the SUBJECT COMPANIES to enter into contracts and other arrangements with nursing home facilities in Louisiana, Mississippi, Alabama, and Florida (Nursing Homes), so that the SUBJECT COMPANIES could fraudulently bill Medicare for psychological testing, psychotherapy, and related services purportedly rendered to patients at these Nursing Homes.

36. **HESSON**, **PARKER**, and other known and unknown co-conspirators, dispatched licensed clinical psychologists, including **HESSON**, **STUBBLEFIELD**, and **TEAL**, and unlicensed aides (Clinical Coordinators) to these Nursing Homes for the purpose of fraudulently billing Medicare for psychological testing, psychotherapy, and related services purportedly rendered to patients at these Nursing Homes.

37. **HESSON**, **STUBBLEFIELD**, **TEAL**, and other known and unknown co-conspirators who were licensed clinical psychologists created falsified documents and other records to support the submission of fraudulent claims to Medicare for psychological testing,

psychotherapy and related services purportedly rendered to patients at these Nursing Homes when such services and were not medically necessary and/or not provided.

38. **HESSON, PARKER, STUBBLEFIELD, TEAL**, and other known and unknown co-conspirators who were licensed clinical psychologists, submitted and caused to be submitted fraudulent claims to Medicare for psychological testing, psychotherapy, and related services purportedly rendered to patients at these Nursing Homes when such services were not medically necessary and/or not provided.

39. Medicare made payments on claims fraudulently submitted and caused to be submitted by **HESSON, PARKER, STUBBLEFIELD, TEAL**, and other known and unknown co-conspirators, and deposited these payments into bank accounts of the SUBJECT COMPANIES.

40. After Medicare payments on these fraudulent claims were deposited into the bank accounts of the SUBJECT COMPANIES, **HESSON** and **PARKER** disbursed proceeds from these bank accounts to themselves, **STUBBLEFIELD, TEAL**, and other known and unknown co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### CONSPIRACY TO MAKE FALSE STATEMENTS RELATED TO HEALTH CARE MATTERS (18 U.S.C. § 371)

A. **AT ALL TIMES MATERIAL HEREIN:**

41. The allegations contained in paragraphs 1 through 27 above are re-alleged and incorporated as if fully set forth in this paragraph.

**B.     THE CONSPIRACY:**

42.    Beginning in about January 2009, and continuing through the present, in the Eastern District of Louisiana and elsewhere, defendants, **RODNEY HESSON, GERTRUDE PARKER, BEVERLY STUBBLEFIELD**, and **JOHN TEAL** did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and to make and use materially false writings and documents knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of or payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1035.

**C.     PURPOSE OF THE CONSPIRACY:**

43.    It was a purpose of the conspiracy for **HESSON, PARKER, STUBBLEFIELD, TEAL**, and their co-conspirators to unlawfully enrich themselves by making materially false, fictitious, and fraudulent statements and representations, and making and using materially false writings and documents knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of or payment for Medicare health care benefits.

**D.     MANNER AND MEANS:**

44.    The manner and means by which **HESSON, PARKER, STUBBLEFIELD, TEAL**, and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the acts identified in Paragraphs 31 through 40 above.

E.  **OVERT ACTS:**

45. On or about June 29, 2011, **HESSON** and an unnamed co-conspirator made false entries that caused claims amounting to approximately 84 units of CPT Code 96101 (Psychological Testing) to be submitted to Medicare.

46. On or about ~~January~~ July 17, 2012, **TEAL** made false entries that caused claims amounting to approximately 100 units of CPT Code 96101 (Psychological Testing) to be submitted to Medicare.

47. On or about March 18, 2013, **STUBBLEFIELD** made false entries relating to services purportedly provided to Medicare beneficiary J.M.

48. From about October 2, 2014, through about October 7, 2014, **STUBBLEFIELD** made false entries that caused claims amounting to approximately 68 units of CPT Code 96101 (Psychological Testing) to be submitted to Medicare.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF HEALTH CARE FRAUD FORFEITURE

1. The allegations contained in Counts 1 and 2 of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

2. As a result of the offenses alleged in Counts 1 and 2, defendants **RODNEY HESSON, GERTRUDE PARKER, BEVERLY STUBBLEFIELD,** and **JOHN TEAL** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses as a result of the violations of Title 18,

United States Code, Sections 1349, 1347 and 1035, which are Federal health care offenses within the meaning of Title 18, United States Code, Section 24, including but not limited to:

    a.     $33,714.04 U.S. Currency seized from First NBC Bank, Account Number: 110065663, in the name of Psychological Care Services of AL, LLC, seized on June 17, 2015;

    b.     $49,625.79 U.S. Currency seized from First NBC Bank, Account Number 110065707, in the name of Psychological Care Services of LA, LLC, seized on June 17, 2015;

    c.     $231,139.39 U.S. Currency seized from First NBC Bank, Account Number 110065652, in the name of Psychological Care Services of MS, LLC, seized on June 17, 2015;

    d.     $88,271.72 U.S. Currency seized from First NBC Bank, Account Number 110065696, in the name of Psychological Care Services Management, LLC, seized on June 17, 2015;

    e.     $5,694.56 U.S. Currency seized from First NBC Bank, Account Number: 110065663, in the name of Psychological Care Services of AL, LLC, seized on July 13, 2015;

    f.     $6,597.11 U.S. Currency seized from First NBC Bank, Account Number: 110065663, in the name of Psychological Care Services of AL, LLC, seized on July 13, 2015;

    g.     $3,815.88 U.S. Currency seized from First NBC Bank, Account Number 110065707, in the name of Psychological Care Services of LA, LLC, seized on July 13, 2015;

    h.     $57,263.75 U.S. Currency seized from First NBC Bank, Account Number 110065652, in the name of Psychological Care Services of MS, LLC, seized on July 13, 2015;

    i.     At least $13,570,119 in United States Currency and all interest and proceeds traceable thereto.

    j.     The government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property;

All in violation of Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

WILLIAM KANELLIS
TRIAL ATTORNEY
CRIMINAL FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE
Virginia Bar No. 40770

PATRICE HARRIS SULLIVAN
ASSISTANT UNITED STATES ATTORNEY
Louisiana Bar No. 14987

New Orleans, Louisiana
October 22, 2015

No. 15-152 "J"

FORM OBD-34

**UNITED STATES DISTRICT COURT**

Eastern _District of_ Louisiana

Criminal _Division_

THE UNITED STATES OF AMERICA

vs.

RODNEY HESSON, PSY.D., GERTRUDE PARKER, BEVERLY STUBBLEFIELD, PH.D., AND JOHN TEAL, PH.D.

**INDICTMENT**

SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD, CONSPIRACY TO SUBMIT FALSE STATEMENTS, AND FORFEITURE

VIOLATIONS:   18 U.S.C. § 1349, 18 U.S.C. § 371, 18 U.S.C. § 982

A true bill

_____
Foreperson

Filed in open court this _____ day of _____ A.D. 2015.

_____
Clerk

Bail, $ _____

WILLIAM KANELLIS, Trial Attorney